# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

| | |
|---|---|
| **EUGENE BAIRD AND RHINO PRODUCTS INC.,** | |
| **PLAINTIFFS,** | |
| v. | Civil Action No.: 2:15-cv-951-MHH |
| **PPG INDUSTRIES, INC., et. Al.,** | |
| **DEFENDANTS** | **JURY TRIAL DEMAND** |

## AMENDED COMPLAINT

**COMES NOW,** Plaintiffs, Eugene Baird and Rhino Products, Inc. (Known hereinafter as "Plaintiffs") by and through counsel and files this Amended Complaint against the Defendants and states as follows:

### (Parties)

1. Plaintiff Eugene Baird (hereinafter "Baird") is an individual over the age of 19 years and a resident of Jefferson County, Alabama.

2. Plaintiff Rhino Products, Inc. (hereinafter "Rhino") is a domestic company authorized to do business in the state of Alabama.

3. Defendant PPG Industries, Inc. (Hereinafter "PPG Industries") is a foreign corporation registered to do business in the State of Alabama.

4. PPG Architectural Finishes, Inc. (Shall also be referred to as "PPG Arch") is a foreign corporation registered to do business in the State of Alabama.

5. Defendant Chris Sides is an individual over the age of 19 and is a resident of the state of Alabama.

6. Defendant Dave Hina is an individual over the age of 19 and is a resident of the state of Alabama.

7. Defendant Joseph Smith is an individual over the age of 19 and an employee of Defendant PPG Industries.

**(JURISDICTION)**

8. Counts I-IV are state law claims. Claims V-VII of this action are brought pursuant to Sections 1961 and 1962, 18 U.S.C. Claims VIII and IX of this action are brought pursuant to Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, as well as the Clayton Act, 15 U.S.C. §§ 4, 15(a), to recover treble damages, attorneys' fees and costs and for injunctive relief. This Court has jurisdiction over the subject matter of these counts pursuant to 15 U.S.C. § 15(a), 15 U.S.C. § 4, 28 U.S.C. § 1331 and 28 U.S.C. § 1337.

**(FACTS)**

9. Plaintiffs are in the business of buying and selling or otherwise transacting paints, paint products, paint related materials, and surface products.

10. Plaintiffs' primary place of business is located at 3507 6th Court South, Birmingham, AL 35222

11. Plaintiff Eugene Baird has been in the paint and surface products industry for almost thirty-five years.

12. In or around 1998, Baird began doing business with Defendants PPG and PPG Arch. (Hereinafter "PPG"), whereby he would buy paint, paint materials, paint related products and surface products with the intent of selling those products as a retailer or on the retail market.

13. Baird over the years subsequent to 1998, served as a major retailer and an authorized dealer for PPG through various businesses owned by Baird.

14. Baird would routinely get PPG products shipped to his place of business from 4261 W. White Road, Oakwood, GA 30566 and other locations, which would travel via interstate commerce as it would be shipped to Baird's business locations in Alabama.

15. Baird would also routinely purchase PPG products from other authorized PPG dealers within the State of Alabama, which would travel via intrastate commerce as it would be shipped or otherwise transported throughout the state.

16. During the time Baird sold PPG products as a dealer, the products were in high demand and Baird would routinely acquire PPG products from other domestic merchants or dealers via intrastate commerce who had a surplus when Baird's inventory would become depleted or low.

17. Some of the merchants or dealers included Herman Helms at Colours Paint in Gadsden, AL, Tim Junkin at Rozar Auto Pain Supply, Inc. and Phillip Williams at The Paint Spot in Tuscaloosa, AL.

18. The Merchants were in the same or similar business as the Plaintiffs in buying and selling paints, paint products and surface products.

19. Baird would transact with the merchants as the president and CEO of Lakeview Paint, Inc. or Plaintiff Rhino Products, Inc. (Hereinafter known as "Rhino").

20. The Plaintiffs would also routinely transact business involving PPG products (paint, paint materials and paint related products) with the domestic merchants previously mentioned within the state of Alabama and other businesses or individuals located in other states.

21. These other states included Florida, Mississippi, Georgia, and Kentucky.

22. In or around March 17, 2012, Baird had a disagreement or a dispute with PPG over a defective product which adversely affected a paint application on a certain building. PPG refused to address the issue and refused to provide reimbursement.

23. As a result of the conflict previously mentioned, PPG subsequently changed their business practices with Baird and drastically reduced doing business with Baird.

24. Eventually PPG withdrew from doing Business with Baird and discontinued allowing him to serve as an authorized PPG dealer.

25. PPG subsequently opened a PPG retail store within the general area (within blocks) of Baird's place of business.

26. Sometime after PPG had opened up a new retail store in Birmingham, AL, the PPG retail store would sell the same or similar products sold by Plaintiffs at a lower price to customers including other dealers with purpose of selling at prices less than fair market value to deter customers from buying from the Plaintiffs. These customers at times were the same customers who did business with the Plaintiffs. These customers eventually stopped doing business with the Plaintiffs because of the reduced prices offered by the PPG store.

27. Plaintiffs at the time, sought to obtain PPG products from other dealers and merchants at special prices offered by PPG. PPG would inquire of the merchants and dealers who have made such request for special prices.

28. When PPG would find out that Baird would make the requests for PPG products at special prices from dealers and merchants, PPG would instruct the dealers and merchants that the special priced products are not available for Baird or anybody associated with Baird.  Eventually PPG stopped selling to Plaintiffs all together.

29. Also during the timeframe provided above, PPG acquired the Devoe Paint Company and interests connected therewith.  PPG and other Defendants made it a point to tell the Plaintiffs that they made the acquisition.

30. Plaintiffs used to carry, buy, purchase and sell Devoe paints until PPG made its acquisition. The Plaintiffs subsequently stopped buying Devoe Paint because it was no longer available for the Plaintiffs to purchase because the Defendants would not sell to the Plaintiffs.

31. Also during the 2012 to 2015 period of time (May 2012, June 2012, July 2012, October-December 2012, March, 2013, May 2013, July 2013-December 2014) on multiple occasions, PPG and other Defendants employed a scheme or a common plan or engaged in a common enterprise to thwart Plaintiffs from being able to transact business involving PPG and Devoe products with certain merchants including Colours Paint in Gadsden, Rozar Auto Paint Supply, Inc. in Birmingham, AL and The Paint Spot in Tuscaloosa, AL.

32. Plaintiffs learned that PPG and other Defendants told Tim Junkin at Rozar Auto Paint Supply, Inc. on multiple occasions that he was forbidden to transact or sell any PPG products to the Plaintiffs.  Herman Helms at Colours Paint in Gadsden, and Phillip Williams at The Paint Spot in Tuscaloosa, AL, were also told the same or there would be consequences if they sold to the Plaintiffs.

33. More specifically during 2012-2015 (On or around May 17, 2012, June 15, 2012, October 19, 2012, March 13, 2013, May 18, 2013, August 6, 2013, January 24, 2014, April 12, 2014,

September 17, 2014, March 9, 2015 and other times thereafter) on multiple occasions, Defendants Chris Sides and Dave Hina told Phillip Williams at the Paint Spot to not to sell to the Plaintiffs or that he would lose his job.

34. The threats made by the Defendants not only adversely or negatively affected Plaintiffs' business financially but it also deprived the non-party The Paint Spot from deriving or otherwise generating a profit from the transactions that would occur if not for the unlawful conduct of the Defendants.

35. Plaintiffs also learned that Defendant National Sales Manager Joseph Smith was telling Chris Sides and Dave Hina initially to forbid dealers from selling PPG products at special prices to Plaintiffs (Namely Eugene Baird). Plaintiffs were also informed by Dealers and Merchants that Joseph Smith, Chris Sides and Dave Hina made threats to them (Namely Rozar Auto Paint Supply, Inc. and the Paint Spot) to not sell any PPG products to Plaintiffs or there would be consequences.

36. Plaintiffs were told during sometime between 2012 and 2015 (On or around May 10, 2013, June 13, 2013, September 18, 2013, November 16, 2013, February 12, 2014, July 13, 2014, November 19, 2014, and other dates) by Tim Junkin at Rozar Auto Paint Supply, Inc. and Phillip Williams at the Paint Spot, that PPG and other Defendants threatened to stop supplying products from Georgia and/or other locations if they sell to the Plaintiffs. They were specifically told by PPG and other Defendants there would consequences if they sold to Eugene Baird. Plaintiffs were told by Rozar Auto Paint Supply, Inc. and The Paint Spot that there will be consequences if they defy PPG by selling to Plaintiffs.

37. Plaintiffs were told by the merchants and dealers that they had no choice but to not sell or transact any business deal involving PPG products with the Plaintiffs. They explained they have too much invested in PPG products, depend on them tremendously in their business and could not

afford to lose those products for their business. Tim Junkin at Rozar Auto Paint Supply, Inc. and Phillip Williams at the Paint Spot specifically told Plaintiffs that PPG and other Defendants (Dave Hina and Chris Sides) threatened them that if they sell to the Baird they would be cut off from being supplied PPG products.

38. As a result of the Merchants being coerced into not transacting PPG products with the Plaintiffs, the Plaintiffs have experienced a dramatic decline in business. Plaintiffs have lost several clients, business revenue and profit as result of the inability to buy and sell PPG products from other dealers and merchants.

39. As a result of the conduct by the Defendants, other Merchants besides the Plaintiffs were caused to lose business and profit as well as being adversely or negatively affected financially due to the improper or unlawful interference with the transactions Plaintiffs attempted to engage with other Merchants.

40. Plaintiffs contend that the Defendants employed a common scheme, plan, and enterprise, intentionally and purposely, to limit PPG products to the Plaintiffs for purchase and resale.

41. Plaintiffs further contend that Defendants have engaged in a common pattern to use threats and coercive acts to discourage other merchants from doing business with Plaintiffs.

42. Plaintiffs aver Defendants did commit two (2) or more (On or around May 10, 2013, June 13, 2013, September 18, 2013, November 16, 2013, February 12, 2014, July 13, 2014, November 20, 2014, December 4, 2014, and other dates), of the offenses as set out herein in a manner which they calculated and premeditated intentionally to threaten continuity of their racketeering activities.

43. Plaintiffs contend that Defendants engaged in acts that did not substantially benefit the Defendants but did substantially harm the Plaintiffs business, calling, career, financial condition, reputation, and/or personal relationships. More specifically that Plaintiffs' business has lost

profits, revenues, clients and relationships with multiple merchants. The same is true of other merchants in that they were affected similarly as the Plaintiffs.

44. Plaintiffs contend that Defendants engaged or agreed with other persons or corporations, to enter, directly or indirectly, into any combination, pool, trust, or confederation to regulate or fix the price of any article or commodity to be sold or produced within the state of Alabama by limiting the quantity of PPG products and attempting to sell products to Plaintiffs for an increased price or not at all.

45. Plaintiffs contend that Defendants did in fact participate as a member or party to a pool agreement, combination, or confederation to fix or limit the quantity of articles or commodity to be produced, manufactured or sold in this state by limiting the quantity of PPG products and attempting to sell products to Plaintiffs for an increased price or not at all.

46. Plaintiffs aver that Defendants have engaged in a scheme and course of conduct designed to adversely affect Plaintiffs' business to further bolster Defendants' monopoly in the retail paint, paint materials, paint related products and surface products retail industry. More specifically that Defendants have forbidden the sale of its products to the Plaintiffs, restricted or restrained free trade of the marketplace in not allowing Plaintiff to purchase PPG products from other merchants and/or retailers. Such conduct was done arbitrarily, unlawfully, frivolously, wrongfully, intentionally and purposefully.

47. As a result of Defendants' unlawful conduct, Plaintiffs have been damaged or injured as a result of an unlawful trust, combine, or monopoly employed and utilized by the Defendants.

48. Plaintiffs also aver that Defendants embarked upon a horizontal boycott and concerted refusal to deal with Plaintiffs as follows: the Corporate Defendants made oral threats to retailers, merchants and Dealers that they would lose product and be terminated, or would be deprived of

special promotional arrangements, programs and deals provided by the Corporate Defendants if they did not stop dealing with and selling to the Plaintiffs.

49.   As an integral part of Defendants' overall scheme to boycott Plaintiffs, the Corporate Defendants engaged in a successful effort to impose the unreasonable restraint of trade complained of herein to coerce the various retailers, merchants or dealers in not doing business with the Plaintiffs based on threats and frivolous allegations. Some or all Merchants reluctantly agreed.

50.   The conduct of the Defendants constitute a group boycott, that is a per se violative of Section 1 of the Sherman Act, directly restrains trade and is the direct result of Corporate Defendants purpose in seeking, successfully, to eliminate and oppress direct competitors, i.e., Plaintiffs herein and others, through coercive acts and threats.

51.   The economic boycott conducted by the Corporate Defendants violates both Sections 1 and 2 of the Sherman Act, causing direct marketplace injury to the Plaintiffs and others similarly situated.

## (CAUSES OF ACTION)

## COUNT I:
## VIOLATION OF ALABAMA ANTITRUST ACT (ALA. CODE § 6-5-60)

52.   Plaintiffs now re-allege each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.

53.   Plaintiffs allege that Defendants created an unlawful trust, combine and/or monopoly through its efforts and agreements to take business away from the Plaintiffs and to give it a monopoly in the retail distribution of paint, paint materials, surface materials, and other similarly situated products or items.

54. The actions of Defendants prevented fair and true competition and amounted to the creation of an unlawful trust, combine and/or monopoly thereby violating the public policy of Alabama as evidenced by Alabama Code §6-5-60, and thereby creating this cause of action.

   WHEREFORE, Plaintiffs demand judgment against Defendant for damages, including actual and punitive, in such a sum as a jury shall reasonably assess, including interest and all costs of these proceedings, in an amount exceeding the jurisdictional minimum of this Court.

## COUNT II:
## CIVIL CONSPIRACY

55. Plaintiffs now re-allege each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.

56. Defendants and Fictitious Defendants A-I conspired to thwart, interfere, deter, ruin or otherwise sabotage Plaintiff by participating in a scheme to severely damage, oppress, or terminate Plaintiffs' business.

57. As a proximate result of the conspiracy of Defendants, Plaintiffs have suffered damages as set forth in this Complaint.

58. Defendants consciously or deliberately engaged in oppression, fraud, wantonness or malice with regard to Plaintiffs, thereby depriving Plaintiff of legal rights and entitling him to punitive damages against Defendants.

59. Plaintiff further avers that Defendants are guilty of conduct evincing a pattern or practice of intentional misconduct or are guilty of conduct involving actual malice.

   WHEREFORE, Plaintiffs demand judgment against Defendants for damages, including actual and punitive, in such a sum as a jury shall reasonably assess, including interest and all costs of these proceedings, in an amount exceeding the jurisdictional minimum of this Court.

## COUNT III:
## INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONS

60. Plaintiffs now re-allege each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.

61. Plaintiffs possessed prospective relationships with third parties with probable future economic benefit to Plaintiffs.

62. Defendants, and each of them, possessed knowledge of certain relationships and intended to disrupt said relationships. Said acts of interference were wrongful independent of the acts of interference themselves.

63. The foregoing acts collectively were designed by Defendants, and each of them, and intended to interfere with Plaintiffs' prospective business advantage with its prospective business relationships.

64. The Defendants, each of them, conduct resulted in actual disruption of said relationships.

65. As a result of such intentional interference with Plaintiffs' prospective business advantage, Plaintiffs' have lost revenues, profits and the diminution of the good will of their business.

66. The Defendants, and each of them, wrongfully interfered with Plaintiffs' prospective business advantage by engaging in acts that were independently wrongful apart from and beyond the acts of interference themselves.

67. As a proximate result of Defendants, and each of them, interference with the relations between Plaintiffs and other merchants, as alleged herein, Defendants, and each of them, caused Plaintiffs to lose the prospective business and economic advantages from those contracts and relationships that they would have enjoyed in the absence of Defendants, and each of the, interference, in an amount to be shown at the time of trial.

68. Defendants, each of them, conduct as alleged herein was implemented with the intent to deprive Plaintiffs of property or rights, and was done in conscious disregard of Plaintiffs' rights, and constituted malice, oppression, fraud, and/or despicable conduct under entitling Plaintiffs to punitive or exemplary damages.

69. The conduct of the Defendants, and each of them, warranting the imposition of punitive damages, was performed on behalf of Defendants, and with the knowledge that there was a substantial likelihood financial and economic harm would befall upon Plaintiffs including injury to the Plaintiffs' reputation.

   WHEREFORE, Plaintiffs demand judgment against Defendants for damages, including actual and punitive, in such a sum as a jury shall reasonably assess, including interest and all costs of these proceedings, in an amount exceeding the jurisdictional minimum of this Court.

## COUNT IV:
## PRICE FIXING OR LIMITING QUANTITY OF A COMMODITY VIOLATION OF § 8-10-1

70. Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.

71. Defendants did limit products made available to the market with the purposeful intent to thwart Plaintiffs.

72. Defendants did limit the quantity of products made available so to prevent Plaintiffs from having access to said products.

73. Defendants did fix the price at a higher rate to prevent or otherwise burden Plaintiffs in precluding a fair unrestrained marketplace access to PPG products.

   WHEREFORE, Plaintiffs demand judgment against Defendants for damages, including actual and punitive, in such a sum as a jury shall reasonably assess, including interest and all costs of these proceedings, in an amount exceeding the jurisdictional minimum of this Court.

## COUNT V:
## ACQUSITION AND MAINTENEANCE OF AN INTEREST IN AND CONTROL OF AN ENTERPRISE ENAGAGED IN PATTERN OF RACKETEERING: 18 U.S.C. §§ 1961 (1) (A): Extortion, (4), (5), (9) AND 1962(a)

74. Plaintiffs now re-allege each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.

75. At various times and places enumerated herein, all Defendants did acquire and/or maintain, directly or indirectly, an interest in or control of a RICO enterprise of individuals who were associated in fact and who did engage in, and whose activities did affect interstate commerce, all in violation of 18 U.S.C. §§ 1961(4), (5), (9), and 1962(b).

76. During the ten (10) calendar years preceding the filing of this Complaint, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ *1961(1)*(A) and (B), and did so in violation of the RICO law at *18 U.S.C. 1962*(b) (Prohibited activities). In particular, Defendants engaged in a pattern of oppressive and extortionate schemes.

77. Plaintiffs further alleges that all Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, i.e. a continuing threat of their respective *racketeering activities,* also in violation of the RICO law at *18 U.S.C. 1962(b) supra.*

  WHEREFORE, Plaintiffs demand judgment against Defendants for damages, including actual, treble, exemplary and punitive, in such a sum as a jury shall reasonably assess, including interest and all costs of these proceedings, in an amount exceeding the jurisdictional minimum of this Court.

## COUNT VI:
## CONDUCT AND PARTICIPATION IN A RICO ENTERPRISE THROUGH A PATTERN OF RACKETEERING ACTIVITY: 18 U.S.C. §§ 1961(5), 1962(c)

78. Plaintiffs now re-allege each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.

79. At various times and places enumerated herein, Defendants did associate with a RICO *enterprise* of individuals who were associated in fact and who engaged in, and whose activities did affect, interstate and foreign commerce.

80. Likewise, all Defendants did conduct and/or participate, either directly or indirectly, in the conduct of the affairs of said RICO enterprise through a pattern of racketeering activity, all in violation of 18 U.S.C. §§ 1961(4), (5), (9), and 1962(c). During the ten (10) calendar years preceding the filing of this Complaint, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ 1961(1)(A) and (B), and did so in violation of the RICO law at 18 U.S.C. 1962(c) (Prohibited activities); and in fact did so within three years.

81. Plaintiffs further allege that all Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, i.e. a continuing threat of their respective *racketeering activities in extortion,* also in violation of the RICO law at *18 U.S.C. 1962(c) supra.*

   WHEREFORE, Plaintiffs demand judgment against Defendants for damages, including actual, treble, exemplary and punitive, in such a sum as a jury shall reasonably assess, including interest and all costs of these proceedings, in an amount exceeding the jurisdictional minimum of this Court.

## COUNT VII:
## CONSPIRACY TO ENGAGE IN A PATTER OF RACKETEERING ACTIVITY: 18 U.S.C. §§ 1961(1)-(5), 1962(d)

82. Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.

83. At various times and places partially enumerated herein, all Defendants did conspire to acquire and maintain an interest in a RICO *enterprise engaged in a pattern of racketeering activity,* in violation of 18 U.S.C. §§ *1962*(b) and (d).

84.  At various times and places partially enumerated herein, all Defendants did also conspire to conduct and participate in said RICO enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. §§ 1962(c) and (d). See also 18 U.S.C. §§ 1961(4), (5) and (9).

85.  During the ten (10) calendar years preceding the filing of this Complaint, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the predicate acts that are itemized at 18 U.S.C. §§ *1961*(1)(A) and (B), in violation of *18 U.S.C. 1962*(d).

86.  Plaintiffs further allege that all Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, i.e. a continuing threat of their respective racketeering activities, also in violation of *18 U.S.C. 1962*(d) (Prohibited activities supra).

WHEREFORE, Plaintiffs demand judgment against Defendants for damages, including actual, treble, exemplary and punitive, in such a sum as a jury shall reasonably assess, including interest and all costs of these proceedings, in an amount exceeding the jurisdictional minimum of this Court.

## COUNT VIII:
## VIOLATION OF § 1 AND 2 OF THE SHERMAN ACT AND § 4 AND 16 OF THE CLAYTON ACT

87. Plaintiffs now re-allege each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.

88. As a direct and proximate consequence and result of the conduct engaged in by the Defendants, serious, significant, and appreciable anti-competitive consequences and effects have occurred in the respective relevant markets to Plaintiffs and those similarly situated, alike.

89. Plaintiffs have suffered substantial injury to their business and property and have lost revenues, going concern value, and the diminution of their good will as a direct and proximate result of Defendants' conduct, behavior, practices, and policies violative of both the Sherman Act and

Clayton Act, as alleged hereinabove, for which damages should be paid in an amount to be proven at the time of trial, but which exceeds this court's jurisdictional minimum of $50,000.00.

90. The Plaintiffs and those similarly situated, have been subjected to monopoly schemes and price or quantity limitations for goods or items as a result of the Defendants' conduct.  The Plaintiffs and those similarly situated have been arbitrarily deprived of an unencumbered free market place, and, thus, the consumer welfare has been harmed. The public injury, and injury to the consumer welfare in general has been adversely affected and damaged substantially.  Defendants' conduct has resulted in additional damage to the public welfare.

91. Plaintiffs are entitled to have their damages trebled pursuant to § 4 of the Clayton Act, and to injunctive relief pursuant to § 16 of the Clayton Act, as more fully set forth below.

92. Plaintiffs have been required to engage attorneys to prosecute this action. Plaintiffs are entitled to an award of reasonable attorney fees and costs incurred in prosecuting this action under § 4 of the Clayton Act.

      WHEREFORE, Plaintiffs demand judgment against Defendants for damages, including actual, treble, exemplary and punitive, in such a sum as a jury shall reasonably assess, including interest and all costs of these proceedings, in an amount exceeding the jurisdictional minimum of this Court.

## COUNT IX:
## PER SE VIOLATION OF SHERMAN ACT -- 15 U.S.C. § 1

93. Plaintiffs now re-allege each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.

94. Defendant Corporations engage in interstate commerce in that it engages in the business of selling and distributing its products throughout the United States, among other things.

95. For several years, Defendants have entered into agreements or otherwise directed third party merchants to engage in group boycotts whereby they refuse to sell or transact business with the Plaintiffs as it relates to PPG products and other goods.

96. The conduct of the Defendants is unlawful because it has the effect of restraining freedom of trade; also, it is an attempt to drive Plaintiffs out of business or otherwise substantially harm their business.

97. The Conduct of the Defendants constitutes conspiring factors to enter into an agreement which imposes a restraint of trade in violation of 15 U.S.C. § 1, whose intent, purpose and effect was to achieve the aforesaid anticompetitive effects. Each such unlawful agreement was a per se violation of the Sherman Act, 15 U.S.C. § 1.

98. Even if the Defendants did not intend to restrain competition, their group boycott violates antitrust laws

99. As a direct and foreseeable result of Defendants' unlawful conduct, Plaintiffs have been damaged in their property in an amount to be determined at trial, for which Defendants are jointly and severally liable.

   WHEREFORE, Plaintiffs demand judgment against Defendants for damages, including actual, treble, exemplary and punitive, in such a sum as a jury shall reasonably assess, including interest and all costs of these proceedings, in an amount exceeding the jurisdictional minimum of this Court.

### **DEMAND FOR RELIEF:**

   WHEREFORE, PREMISES CONSIDERED, Plaintiff, through his Counsel, pursuant to the statutory, common law authority and other applicable laws of Alabama, demands judgment against Defendants and prays:

1.   That process issue, be served upon the Defendants requiring Defendants to appear and answer this complaint for the aggrieved harm or injuries as sustained by the Plaintiff.

2. That this Court adjudge and decree that the Defendants engaged in the aforementioned acts which violate Alabama Laws and any Federal Law.

3. That this Court enters judgment against the Defendants, jointly and severally, in favor of the Plaintiff for compensatory, incidental, consequential, treble, exemplary, and punitive damages, including attorneys' fees and costs.

4. That all costs in this case be taxed against the Defendants.

5. That this Court grants Plaintiffs such other and further relief as this Court deems just and proper.

/s/ Alex R. Hirschfield
Alex R. Hirschfield, ESQ. (HIR005)
David C. Jamieson (JAM 035)
Attorneys for Plaintiffs

OF COUNSEL:
Jamieson and Hirschfield, LLC
P. O. Box 131374
Birmingham, Alabama 35203
(205) 701-1201
alex@jhlawgroup.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 3rd, 2015, I served a copy of the foregoing on counsel of record for all parties via the Clerk of the Court electronic filing system, which will send notification of such filing to the following attorney of record:

Andrew Signor, Esq.
Attorney for Defendants
Hand Arendall
2001 Park Place, #1200
Birmingham, AL 35203

Serve Defendants at the following address:

| | |
|---|---|
| Chris Sides | Joe Smith |
| 107 Chase Creek Terrace | National Sales Manager for PPG |
| Pelham, AL 35124 | PO Box 30170 |
| | College Station, TX 77842 |